UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-01995-WYD

PATRICIA NORWOOD-FEAR,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

      Defendant.

_____

**AMENDED ORDER**
_____

I.    <u>INTRODUCTION</u>

    THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for Disability Insurance Benefits under the Social Security

Act, 42 U.S.C. §§ 401-433.  Plaintiff's application filed August 28, 1989 (transcript ["tr."]

at 100-02), alleged that Plaintiff, who was born in 1936, became disabled on November

30, 1988 when she was 52 years old.  *Id.* at 100, 814.[1]  Plaintiff was last insured for

benefits through September 30, 1992, when she was 56 years old.  *Id.* at 812.  Her

application was denied initially and on reconsideration.  *Id.* at 104-05.

    On January 5, 1996, Plaintiff filed a second application for benefits.  Tr. at 248-

50.  In February 1997, her previous application was reopened under a class action

settlement.  *Id.* at 811.  The applications were denied in February 1997 on the basis

_____

    [1]  Plaintiff's opening brief refers to an onset date of October 1988.  However, the application
says the onset date was November 30, 1988.  *Id.* at 100.

that while Plaintiff could not perform her previous work, she could do other work. *Id.* at 174-75. Plaintiff requested reconsideration, and a hearing was held June 26, 1997. *Id.* at 34-99. Thereafter, Administrative Law Judge ["ALJ"] Michel G. Heitz denied Plaintiff's applications. *Id.* at 15-29. He found that Plaintiff was not disabled at step four of the sequential evaluation required by law because Plaintiff was able to perform her past relevant work as a cashier and sales person. *Id.* at 29.

Plaintiff sought judicial review. On May 21, 2001, Judge Miller of this Court reversed the Commissioner's decision and remanded for further proceedings. Tr. at 833-36. Judge Miller's Order found that "the ALJ's decision was not supported by substantial evidence and improper legal standards were applied." *Id.* at 835. Upon receipt of this Order, the Appeals Council remanded the case to a new ALJ, instructing the ALJ to "comply with the court order" and "issue a new decision." Tr. at 867-68. More than two years after Judge Miller's remand order asking for expedited review, hearings were held on July 21, 2003 and September 9, 2003. *Id.* at 980-1037, 1038-1113. In a decision dated February 18, 2004, ALJ Antoinette Martinez determined that Plaintiff was not disabled. *Id.* at 808-32. A more detailed review of this decision is conducted in Section II, *infra*.

On August 31, 2005, the Appeals Council declined to assume jurisdiction. *Id.* at 679-81. The ALJ's decision thus became final for purposes of judicial review. This case was expedited due to the length of time it has been pending (Plaintiff's first application was filed in 1989) and Plaintiff's poor health as noted in her Unopposed Motion to Set for Oral Argument.

II.   THE ALJ'S DECISION

Plaintiff alleges disability "due to a combination of physical and mental complaints including a history of glaucoma, hearing loss, status-post pulmonary embolus, chronic venous insufficiency, bulging of the thoracic spine, and bipolar disorder." Tr. at 814. The ALJ found at step one of the sequential analysis that Plaintiff has not engaged in substantial gainful activity. *Id.* at 816, 831.

At step two, the ALJ found that during the period of alleged disability up to the date Plaintiff was last insured, Plaintiff had the following severe impairments: "glaucoma with decreased bilateral visual acuity and decreased visual fields, bilateral sensorineural hearing loss, bulging of the thoracic spine, status-post pulmonary embolus, and chronic venous insufficiency." *Id.* The ALJ found that Plaintiff did not have a severe mental impairment, even though she had a history of bipolar disorder. *Id.* at 816-19. At step three, the ALJ found that Plaintiff's impairments, singly or "considered collectively", did not meet or equal a Medical Listing. *Id.* at 819-25, 831.

The ALJ then examined the medical evidence and assessed Plaintiff's residual functional capacity ["RFC"]. Tr. at 825-29. Plaintiff was found as of the date she was last insured to have the RFC:

> to lift, carry, push and pull 20 pound occasionally and 10 pounds frequently. She could sit, stand or walk for 6 hours in an 8-hour day, each, with the opportunity to change position each hour. The claimant could not work around dangerous machinery and was unable to drive as part of her work duties, as a result of her combined vision and hearing deficits. The claimant was without further restriction during the period relevant to this decision.

*Id.* at 828-29, 31.

-3-

In making this assessment, the ALJ considered Plaintiff's credibility. Tr. at 825. After considering Plaintiff's "extensive daily activities", "her history of substantial work activity" prior to the onset date, "an absence in significant signs and findings or medical opinion evidence showing serious functional limitations", and a lack of documentation to support the frequency in medical treatment, the ALJ found that the record as a whole did not support Plaintiff's testimony as to the alleged severity of her symptoms and limitations. *Id.* at 828. She further found that the record did not "establish a significant and disabling deterioration in [Plaintiff's] medical condition prior to her date last insured." *Id.* Thus, the ALJ found that Plaintiff was not fully credible. *Id.* at 831.

Proceeding to step four, the ALJ analyzed Plaintiff's ability to perform her past relevant work. Tr. at 829-31. The ALJ considered the testimony of Deborah Christensen, a vocational expert ["VE"] retained by the ALJ, and vocational testimony from Dr. Litvin, a vocational rehabilitation counselor retained by Plaintiff. *Id.* at 829-31, 818. The ALJ found that Ms. Christensen's testimony was consistent with that of Dr. Litvin. *Id.* at 830. The ALJ further found, based on the VEs' testimony, that Plaintiff was able to perform her past relevant work as a counter clerk as generally performed in the national economy (Dictionary of Occupational Titles ["DOT"] # 249.366-010) and a teller (DOT # 211.362-018) "as the claimant actually performed that job." *Id.* at 830-32.

III.   ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).   Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).   "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).   "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).   Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

B.   Whether the ALJ's Decision is Supported by Substantial Evidence

My review of the record reveals a number of errors, including an error at step three that requires the Commissioner's decision to be reversed and Plaintiff to be awarded benefits.

1.   The ALJ Erred at Step Three

Judge Miller remanded this case to the Commissioner in 2001 with instructions to begin the analysis at step three of the sequential evaluation.   At that step, the ALJ found that Plaintiff's impairments, including her visual impairments, did not meet the Listings.   Tr. at 819.   In so finding, she stated that she considered the visual impairments found in Section 2.00 of the Listings. *Id.*; *see* 20 C.F.R. Pt. 404, Subpt. P,

App. 1, § 2.00.  That section requires the ALJ to look at three different types of impairments—visual acuity, loss of the peripheral field and loss of visual efficiency. *See id.*, § 2.00A.1 ("Diseases or injury of the eye may produce loss of visual acuity *or loss of the peripheral field. . . .* Loss of the peripheral field restricts the ability of an individual to move about freely"); § 2.00A.5 (loss of visual efficiency may be caused by reduction of visual acuity or visual field.).

The ALJ focused primarily on visual acuity.  Tr. at 821-22.  Plaintiff does not dispute that her visual acuity did not meet the Listings.  Instead, Plaintiff argues that her loss of field vision and visual efficiency met Listings 2.03 and 2.04.  Specifically, her treating ophthalmologist and eye surgeon Dr. Whalen opined in September 1989 that Plaintiff's visual efficiency is almost completely occluded, "to within five degrees of central fixation, both above and below the horizontal meridian."  Tr. at 324.  "Her visual field is constricted to within five degrees of center fixation. . . ."  *Id.*  He stated, "Visual field constriction of this nature is quite debilitating since it affects mobility in all circumstances."  *Id.*  He also found progressive deterioration in Plaintiff's eyesight, diagnosed "essential iris atrophy, both eyes", "[s]evere glaucoma, both eyes" and "severe visual field loss in both eyes".  *Id.* at 324, 482.  These findings are, Plaintiff contends, consistent with Dr. Whalen's opinion that the damage to Plaintiff's vision is "permanent and the prognosis for improvement in this damage is nil."  *Id.* at 482.

It appears from my review of Dr. Whalen's September 1989 report (tr. at 324) that Plaintiff's visual impairments meet Listings 2.03 and/or 2.04 and render Plaintiff disabled.  Listing 2.03, entitled "Contraction of peripheral visual fields in the better eye"

states that the Listing is met if the contraction is "To 10° or less from the point of

fixation" or "To 20 percent or less visual field efficiency."  Similarly, 2.04, entitled "Loss

of Visual efficiency", states that this loss meets the Listing if "[t]he visual efficiency of

the better eye after correction is 20 percent or less."  In discussing this report, the ALJ

did not properly consider Dr. Whalen's findings that Plaintiff's visual field loss and

visual efficiency were severely impacted (to within five degrees of center fixation) and

whether those findings met the requirements of Listings 2.03 and 2/04.  This was

clearly error.  See *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th

Cir. 2004) (an ALJ may not selectively pick out portions of the treating physician's

reports that support a RFC and the denial of benefits, while improperly rejecting the

other portions).

The only actual finding of Dr. Whalen discussed by the ALJ was his opinion that

Plaintiff's visual problems would have a debilitating effect on Plaintiff's mobility.  The

ALJ found that this statement was not supported by the objective findings discussed in

her opinion and the fact that Plaintiff's vision remained stable.  Tr. at 822.  Again, this is

not supported by substantial evidence, as the findings that the ALJ referred to involved

visual acuity, not the impairments of field loss and visual efficiency referred to by

Dr. Whalen.[2]  Further, the ALJ ignored the testing, Octopus Reports, and extensive

treatment of Plaintiff by Dr. Whalen which objectively documented the visual

---

[2]  Indeed, the ALJ repeatedly shows confusion between Plaintiff's loss in the visual field and visual efficiency with visual acuity.  For example, while she acknowledged that Plaintiff had decreased field loss bilaterally, the AlJ found it was not until November 1993, more than one year after her insured status had expired, that Plaintiff's *visual acuity* deteriorated.  Tr. at 822.  The two issues are independent, as acknowledged by the Listings.  A deterioration in one cannot be used to support or reject problems with the other type of vision problem.

impairments noted in the September 1989 report.  *See* Tr. at 356-465.  This record of treatment was not inconsistent with substantial evidence.  Indeed, Plaintiff's treating physician Dr. Brown substantiated Dr. Whalen's findings[3], and no examining physician found to the contrary.[4]  Thus, the ALJ was required to give Dr. Whalen's findings controlling weight.  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments . . . if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record'") (quotation omitted).

The ALJ also gave other improper reasons for giving "little weight" to Dr. Whalen's opinion about debilitating effects from Plaintiff's visual impairments.  I first note that the ALJ's reference to "little weight" does not allow the Court to determine what weight, if any, was given to this finding.  It appears, however, that the ALJ gave it no weight, which should have been stated in the opinion.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quotation omitted).[5]

---

[3]  Dr. Brown found that Plaintiff has glaucoma, "loss of peripheral vision", "difficulty driving due to poor vision" and "difficulty in activities of daily living, because of her poor vision".  *Id.* at 230-31.

[4]  I discuss the testimony of Dr. Kauver, a nonexamining ophthalmologist retained by the ALJ, below.

[5]  The ALJ also improperly failed to assign weight to the opinions of other treating physicians of Plaintiff, including Dr. Brown and Dr. Spies.  While the ALJ discussed the findings of Dr. Spies, she did

The ALJ also found that the frequency of visits to Dr. Whalen were not as significant as Plaintiff claimed.  This appears not be to true, as Plaintiff has documented extensive treatment from Dr. Whalen in a chart attached to her Reply Brief.  There is no substantive discussion by the ALJ of the frequency of medical appointments shown by the record, which Plaintiff summarized at the ALJ's request, and the ALJ's finding on this issue appears to be mere conclusion.  Further, even if the record did not actually support the frequency of medical appointments testified to by Plaintiff, this would not provide a basis for the ALJ to disregard objective findings of the treating physician.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.)*'" (emphasis in original) (quotation omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to substitute her own medical judgment for that medical professionals)

The ALJ further focused on Plaintiff's admission that she was driving and engaging in other activities as a basis to reject Dr. Whalen's opinion and find that

---

not discuss what weight she gave these findings.  Tr. at 817-18.  It appears, however, that she assigned them no weight.  *Id.*  As to Dr. Brown, Plaintiff's treating physician, while the ALJ discussed some of his findings she ignored others, including his opinions that multiple medical impairments contribute to Plaintiff's limitations, "all of which require constant medical attention", that Plaintiff's health in the past year had "seemingly deteriorated significantly" and that her prognosis was "for very limited expected improvement".  *Id.* at 230-31.  The ALJ also did not assign any weight to this opinion, and did not discuss whether Dr. Brown's opinions are supported by his treatment notes and are consistent with other evidence.  This also was error.

Plaintiff's visual impairments did not meet the Listings.  Tr. at 821-22.  This finding was made despite the ALJ's recognition that Plaintiff's treating physician Dr. Brown opined that Plaintiff would have difficulty driving due to her vision deficits.  *Id*. 822, 230-31. Dr. Kauver, an expert retained by the ALJ, also acknowledged that Plaintiff would have difficulty driving.  *Id*. at 86.  Further, he stated that just because one *can* drive does not mean that one *should* drive from a medical perspective.  *Id*.  Dr. Kauver also stated that Plaintiff should probably be in a job where she did not have to drive.  *Id*.  The ALJ ignored the medical evidence showing that Plaintiff's ability to drive was impacted by her visual impairments, and improperly substituted her own judgment that Plaintiff's driving and other activities meant that her visual impairments were not severe.  This was error.  *Langley*, 373 F.3d at 1121; *see also Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity").

Finally, the ALJ relied on Dr. Kauver's opinion that Plaintiff's impairments, including the loss of field vision and visual efficiency, did not meet the Listings.  Tr. at 822-23.  Dr. Kauver was an nonexamining ophthalmologist retained by the ALJ to testify at the 1997 hearing.  He stated that he did not believe that the medical evidence he was provided showed that Plaintiff's visual impairments met the Listings.  *Id*. at 82-84.  I find that Dr. Kauver's opinion does not constitute substantial evidence that would allow the ALJ to reject the report of treating ophthalmologist Dr. Whalen.

First, it is unclear what specific medical evidence that Dr. Kauver reviewed, and whether it even included the September 1989 report of Dr. Whalen.  *See* Tr. at 79-82.

Second, while Dr. Kauver stated that the reports he reviewed did not meet the Listings

for visual field loss, this is based on pure speculation about how the tests in the reports

were performed and his inability in 1997 to go back and recreate tests performed in

1992. *Id.* at 82-83.  This speculation about how the tests were performed is not

supported by the medical records and is improper.  Further, Dr. Kauver's findings are

improperly based on speculation about Plaintiff's activities (*id.* 83-84), which I

previously found was not a proper basis to reject the objective findings of Dr. Whalen.

Finally, contrary to the ALJ's findings that Dr. Kauver's opinion "was consistent

with other evidence and is supported by the record as a whole" (tr. at 822),

Dr. Kauver's opinion does not appear to be supported by any objective evidence in the

record.  Thus, the ALJ was not entitled to rely on this opinion as substantial evidence.

*See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (evaluations by

consultative examiners are insufficient to constitute substantial evidence where they

are not accompanied by thorough written reports or testimony); *see also Lee v.*

*Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (if the ALJ relies heavily on opinions

of an agency medical consultant that did not examine the claimant, those "opinions

must themselves find adequate support in the medical evidence").

Based upon the foregoing, I find that the ALJ's determination that Plaintiff's

visual impairments as of the date she was last insured did not rise to Listing-level

severity is not supported by substantial evidence.  Dr. Whalen's findings regarding the

severity of Plaintiff's visual field loss and/or visual efficiency appear to meet the

requirements of Listings 2.03 and/or 2.04, and there is no medical or other substantial

evidence to the contrary.  Accordingly, I find that Plaintiff is disabled and that the Commissioner's decision must be reversed and remanded for an immediate award of benefits.  *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) ("'outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose'") (quotations omitted).  Here, the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which [s]he applied." *See id*.

2.   The ALJ Erred at Step Four in Connection with the Finding as to Past Relevant Work

Plaintiff argues that the finding that she could perform the past relevant work ["PRW"] of a teller is not supported by substantial evidence since the teller position does not meet the legal definition of PRW.  In the reply, Plaintiff also asserts that the other PRW the ALJ found Plaintiff could do—a counter clerk position—does not meet the legal definition of PRW.  To be considered PRW, a job must constitute "substantial gainful activity" ["SGA"] and last "long enough for [the claimant] to learn to do it."  20 C.F.R. § 1560(b)(1).  While the Commissioner argues that the teller position lasted long enough for Plaintiff to learn it, she does not address the argument that the teller position did not constitute SGA.

Plaintiff asserts that she held the teller job only three months and earned $2207.63 during that period.  Tr. at 275, 871.  Averaging that amount over 12 months pursuant to 20 C.F.R. § 404.1574a, her earnings were $225.00 per month.  This is less than the amount required to qualify automatically as SGA.  20 C.F.R. § 404.1574(b)(2).

Plaintiff also asserts, however, that since her earnings were more than $190.00 a month, the regulations require that certain factors be considered to determine whether the work is SGA.  20 C.F.R. § 404.1574(b); *see also Jozefowicz v. Heckler*, 811 F.2d 1352, 1356 (10th Cir. 1987).  Plaintiff asserts that the same analysis applies to the counter clerk position since she earned only $1,744.05 in that position.

Further, 20 C.F.R. § 404.1576 provides that averaged monthly earnings can be reduced if a claimant has medical expenses she needs to incur to keep working.  Here, the record shows that Plaintiff had such medical expenses.  *See* Pl.'s Opening Br. at 6 and Reply Br. at 4.  Thus, I find that the ALJ erred in finding that Plaintiff can perform her PRW because she did not conduct the required analyses under these regulations.  This is particularly significant since if Plaintiff cannot perform her PRW, it appears she must be found disabled at step five under the grids.

Finally, the evidence appears to suggest that Plaintiff may not have been able to perform the PRW, and this was not adequately developed by the ALJ.  The vocational experts retained by both the ALJ and Plaintiff testified that Plaintiff's medical management issues and/or absenteeism from work may restrict Plaintiff from any gainful employment.  Tr. at 744, 1091-92, 1057-58.  The ALJ improperly discounted this testimony since she did not find Plaintiff credible as to the frequency of her appointments.  The record, however, suggested that Plaintiff did have a substantial history of medical appointments and hospitalization which supported the experts' testimony.  *See* Att. 1 to Reply Br.  The ALJ erred in failing to address this.

Further, the VE retained by the ALJ testified that a person with the impairments noted in the ALJ's hypothetical question would be unable to perform the sales clerk/ counter clerk position.  Tr. at 1088-90.  The ALJ then propounded interrogatories to the VE, presumably since she was not satisfied with this answer.  The VE stated in one response to the interrogatories that the hypothetical person could not perform the counter clerk position (*id.* at 744), and in a different response that the counter clerk position could be performed if the person was able to perform the duties by walking or the use of public transportation, but not if the person was unable to drive.  *Id.* at 950-51.

Here, as noted in Section III.B.1, *supra*, there is medical evidence that Plaintiff's ability to drive was impaired by her visual impairments, and the ALJ improperly assumed without any evidentiary support that Plaintiff could perform the counter clerk position without the need to drive.  Tr. at 830.  Indeed, she noted that this was reasonable given Plaintiff's "minimal visual deficits during the relevant period."  *Id.*  This finding was clearly error for the reasons discussed in the previous section.  The ALJ also did not address the discrepancies in the VE's findings as to whether Plaintiff could perform the counter clerk position.  Accordingly, I find that the evidence was not substantial enough to support the ALJ's decision that Plaintiff could perform that job. *See Campbell v. Bowen*, 822 F.2d 1518, 1524 (10th Cir. 1987) (the ALJ did not meet the burden of showing that the plaintiff could work where "the record fail[ed] to support a determination that Campbell could actually work in any of the jobs listed by the vocational expert"); *see also Jiminez v. Shalala*, 879 F. Supp. 1069, 1076 (D. Colo.

-14-

1995) (questioning the ability to rely on a vocational expert who had doubts and/or

hedged about the availability of the jobs he found the plaintiff could perform).

### 3.   The ALJ Did Not Comply with the Remand Order

I next address the Remand Order of Judge Miller, and find that the ALJ did not

comply with her duties as to that Order.  In that Order, Judge Miller found that "(1) the

ALJ failed to properly consider plaintiff's impairments, including her mental

impairments, in combination with each other to determine the ultimate impact on her

ability to work. . . ; (2) the ALJ failed to obtain sufficiently comprehensive medical

expert testimony concerning the total impact of plaintiff's impairments in combination,

including a statement of medical equivalence; (3) the ALJ failed to adequately consider

the impact plaintiff's medical management had on her ability to perform past relevant

work and on her residual function[al] capacity; and (4) the ALJ failed to adequately

develop the record through vocational expert evidence on the impact of the

combination of plaintiff's impairments on her ability to perform her past relevant work

and on her residual functional capacity."  Tr. at 835.

The remand order was based in part on the Commissioner's acknowledgment

that the matter should be remanded "'so that an ALJ can fully evaluate plaintiff's

impairments at step three of the sequential evaluation, receive more comprehensive

testimony from a medical expert, including a statement of medical equivalence, based

on a consideration of plaintiff's impairments in combination, and provide in the decision

a comparison of plaintiff's residual functional capacity at the time of her date last

insured (September 30, 1992) with the specific demands of her past relevant work.'"  Tr.

at 834-35 (quoting Def.'s Resp. at 6).  Judge Miller directed the Commissioner on remand to evaluate plaintiff's impairments and their impact on her work abilities beginning at step three.  *Id.* at 835.  He further directed the Commissioner to obtain "[a]dditional evidence . . . on these issues from medical experts, the plaintiff and, if appropriate, vocational experts", to expedite the matter as much as possible, and to assign a different ALJ.  *Id.* at 835-36.

On remand, as here, Plaintiff argued that the ALJ failed to comply with this Order because she failed to obtain medical testimony as to the combined effects of Plaintiff's impairments.  The ALJ acknowledged this argument in her decision.  Tr. at 823-24.  The ALJ stated that she did not violate the remand order since she "obtained the testimony of three medical experts in conjunction with this case, one of whom testified specifically on the issue of medical equivalence. . . ."  *Id.* at 823.  In presenting these experts, the ALJ stated that "the Administration has fully satisfied its duties in developing the record."  *Id.*

The ALJ acknowledged, however, that "neither of her medical experts [Dr. Humm or Dr. Pelc] could give an opinion on the effect of the claimant's combined medical impairments."  Tr. at 823.  Indeed, both Dr. Humm (a general surgeon) and Dr. Pelc (a psychologist) declined to testify about the combined effects of all of Plaintiff's impairments.  Tr. at 1005, 1008.  Dr. Humm testified as to Plaintiff's physical impairments only, excluding Plaintiff's visual and hearing impairments.  *Id.* at 1008.  Dr. Pelc testified only as to Plaintiff's mental impairments.  *Id.* at 1005.  However, the ALJ found that "when considered in conjunction with other updated medical expert

testimony, those opinions support ["ALJ"] Heitz's previous finding that the claimant has no impairment 'or combination of impairments that are of listing severity.'" *Id.* (quotation omitted). The ALJ did not specify what other "updated medical expert testimony" she was relying on.

As to Plaintiff's visual impairments, the ALJ acknowledged that Dr. Humm did not feel comfortable commenting on those impairments or Plaintiff's hearing impairments. *Id.* at 824. The ALJ found, however, that "the evidence is unpersuasive in showing that even when considered with her other medical complaints, the claimants' vision impairment significantly interfered with her overall capacity for work functioning." *Id.* In reaching that decision, the ALJ improperly relied on the opinion of Dr. Kauver, the nonexamining ophthalmologist and the other factors that I rejected as substantial evidence in Section III.B.1, *supra.* Thus, not only did the ALJ improperly assess the medical evidence as to Plaintiff's visual impairments which I found rendered Plaintiff disabled under the Listings, the ALJ also erred by failing to consider the impacts of Plaintiff's visual and hearing impairments in combination with the other impairments, as required by Judge Miller.

The ALJ also failed to consider Plaintiff's mental impairments in combination with the physical impairments as required by the remand order. Indeed, that order required the ALJ to consider Plaintiff's mental and physical impairments in combination to determine their ultimate impact on her ability to work, even though the mental impairments had previously been found by ALJ Heitz not to be severe. Tr. at 22-23. This is required by law. See *Langley v. Barnhart*, 373 F.3d at 1116, 1123-24 (10th Cir.

2004) ("the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity") (quoting 20 C.F.R. § 404.1523)).

The evidence of record from the consultative psychiatrist Dr. Kleinman was that while Plaintiff was not disabled from a psychiatric standpoint, Plaintiff's "combination of problems might be more than this patient can deal with any one time."  Tr. at 246.[6] Dr. Pelc, the psychologist retained by the ALJ to testify at the hearing, acknowledged this finding of Dr. Kleinman and stated that it must refer to other significant medical problems of the Plaintiff.  *Id.* at 1000.  The ALJ mischaracterized this testimony in her decision, stating without any support from the record that his comment "seemed to be based on the alleged severity of the claimant's subjective complaints, as no findings or diagnoses were made by Dr. Kleinman regarding the claimant's reported physical impairments."  *Id.*[7]  I also note that Dr. Pelc testified, consistent with Dr. Kleinman's findings, that "it would not be unreasonable to assume that a person who is having medical problems would have some increase in their psychological symptoms."  *Id.* at 1003.

---

[6]  Also, Dr. Spies, an internist who treated Plaintiff's mental impairments, found, among other things, that Plaintiff had "bipolar disorder" which was "managed on lithium", "significant depression," occasional insomnia and anxiety, suffered from stress, and opined that Plaintiff had a "severe emotional and psychiatric disorder."  Tr. at 636-37, 640, 646, and 660.  Dr. Brown, Plaintiff's treating physician, also diagnosed "[h]istory of chronic depression."  *Id.* at 334.

[7]  While Dr. Kleinman did not make diagnoses as to physical impairments, since he was not retained for such a purpose, he did note the "multitude of medical problems" Plaintiff has, including her glaucoma, and the medication taken by Plaintiff for same.  Tr. at 245.  The ALJ ignored these findings in connection with her statement.

While Dr. Pelc was retained to testify about Plaintiff's mental impairments, he declined to give an opinion as to the effects of Plaintiff's mental impairments on her functional capacity (Tr. at 1005), as required by the remand order.  Instead, he testified only as to whether the mental impairments met the Listings, which he found they did not.  *Id.*  A finding of disability cannot, however, be inferred by a failure to meet or equal a Listing.  Further, Dr. Pelc did not testify and the ALJ did not elicit any other testimony as to the impact of Plaintiff's combined mental and physical impairments.  The ALJ improperly construed Dr. Pelc's testimony as to the Listings to mean that Plaintiff's impairments did not impact her ability to work, without any support in the record for this finding.

The ALJ also found that "it would be difficult to find any expert who could testify regarding all of the claimant's medical impairments, as she alleges a variety of complaints including hearing and vision deficits, cardiovascular and musculoskeletal issues, and mental problems."  Tr. at 824.  However, the remand order required the ALJ to do this.  This was not an impossible task.  Indeed, Plaintiff asserts that there was evidence on this issue from treating physician Dr. Brown (*id.* at 23-31), treating ophthalmologist and eye surgeon Dr. Whalen (*id.* at 324), and psychiatrist Dr. Kleinman (*id.* at 246).  Although the ALJ criticized these physicians, she failed to rebut their findings that Plaintiff may be disabled by multiple impairments.  At the very least, if the ALJ was not obtain to obtain her own experts on the issue of the combination of impairments, she should have contacted the treating physicians to determine their opinion about the impact of the combination of impairments on Plaintiff's ability to work.

See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).  The ALJ had a duty

to fully develop the record on this issue.  *See Baca v. Dept. of Health & Human Servs.*,

5 F.3d 476, 479-80 (10th Cir. 1993)).  Her failure to develop the record on this issue

violated the remand order and her duties under the Social Security Act.

The ALJ further faulted Plaintiff for not presenting her own medical expert

testimony on the issue of medical equivalence.  Tr. at 823.  Here again I find error.  The

remand order required the ALJ to obtain a statement of medical equivalence to assess

the total impact of plaintiff's impairments in combination.  The ALJ stated that she

complied with this order (*id.*), but the findings of medical equivalence by Dr. Humm and

Dr. Pelc did not take into account the combination of Plaintiff's impairments.  There was

no requirement in the remand order that Plaintiff obtain such a statement, and it was

not Plaintiff's duty to present expert testimony on this issue.  Instead, Plaintiff's duty at

step three was to present objective medical evidence in the record that supports a

finding that she meets a Listing.  *See Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir.

1988).  Plaintiff presented such evidence in connection with the September 1989 report

of Dr. Whalen.

In conclusion on this issue, the evidence of record was that a combination of

Plaintiff's impairments, including her visual impairments and her mental impairments,

may impact her ability to work.  The Commissioner agreed to a remand of the case so

that the combination of impairments could properly be assessed at step three and

beyond.  The ALJ did not follow the directives of the remand order since she did not

obtain medical testimony or a statement of medical equivalence as to the combination

of Plaintiff's impairments on her ability to work, nor did she properly consider the medical evidence on this issue.

I also find that the ALJ failed to comply with the order of remand directing the ALJ to assess Plaintiff's medical management issues and the impact of this on Plaintiff's RFC. The record substantiates that Plaintiff had many medical appointments and hospitalizations. *See* Att. 1 to Pl.'s Reply Br. The ALJ found, however, that the record did not support the frequency in medical appointments reported by the Plaintiff.[8] Tr. at 827. This finding appears not to be based on substantial evidence from my review of the record and Plaintiff's briefs.

However, even if the record did not support Plaintiff's testimony as to the frequency of treatment, this would impact only a finding as to Plaintiff's credibility. It does not impact the substantial evidence in the record that Plaintiff had significant medical treatment throughout the period of her disability. *See, e.g.*, Tr. at 946-48 (Summary of Medical Treatment); Att. 1 to Pl.'s Reply Br. The ALJ was required to assess this evidence independent of any findings she may have made on credibility. The record evidence of medical appointments appears to be consistent with the finding of Plaintiff's treating physician Dr. Brown that Plaintiff required "constant medical treatment." Tr. at 231. As a result of this treatment, the record also contains substantial evidence of Plaintiff's absenteeism from work. The ALJ failed to properly

---

[8] I note at the hearing that the ALJ did not appear to be familiar with the record on this issue, and asked the Plaintiff and her counsel to substantiate the frequency of her medical appointments. *See* Tr. at 989-90.

address this issue in her decision, even though this was required in the remand order and the Commissioner agreed to do this in connection with the remand.

Related to this issue, the ALJ also ignored and/or failed to properly address the vocational testimony on this issue. The vocational expert ["VE"] retained by the ALJ found, based on the record of absenteeism, that Plaintiff would not be able to maintain employment. Tr. at 744. She also found in response to a hypothetical question that a person who regularly missed work in connection with medical treatment would be precluded from all competitive employment. *Id.* at 1091-92. The VE retained by Plaintiff also testified that Plaintiff would be precluded from work based on these issues. *Id.* at 1057-58.[9] These errors also require reversal of the Commissioner's decision.

     5.     The Hypothetical Questions May Not Have Included All of Plaintiff's Impairments

Since the ALJ failed to properly assess the combined impacts of Plaintiff's mental and physical impairments on Plaintiff's ability to work, the hypothetical question may not have included all of the impairments. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to

---

[9] The ALJ improperly rejected Dr. Litvin's testimony on the basis that he did not examine Plaintiff before 1992. *Id.* at 827. The same is true, however, of the state agency physicians that the ALJ relied on, including Dr. Kauver, Dr. Pelc and Dr. Humm. This was not a basis to reject his findings. The ALJ also improperly rejected Dr. Litvin's opinion that the combination of Plaintiff's impairments would adversely impact Plaintiff's work capacity. Tr. at 669. The ALJ rejected this on the basis that Dr. Litvin was not a medical source. *Id.* at 823,. 827. However, Dr. Litvin did not give a medical opinion but issued a vocational opinion based on whether Plaintiff could work with a combination of impairments documented by the record.

support the . . . decision'") (quotation omitted).  Further, the hypothetical questions did

not address Plaintiff's visual impairments, medical management issues/absenteeism,

and other documented impairments such as stress noted in the record.  Accordingly,

the ALJ's finding that Plaintiff was not disabled at step four based on the testimony of

vocational experts is not based on substantial evidence.  This also requires reversal.

IV.   <u>CONCLUSION</u>

Based upon the errors described above, I find that this case must be reversed.  I

further find that Plaintiff is entitled to an immediate award of benefits.

Accordingly, it is

ORDERED that this case is **REVERSED**.  It is

FURTHER ORDERED that the Commissioner shall calculate and award

Disability Insurance Benefits to Plaintiff from the date of Plaintiff's application in 1988,

allowing for all appropriate periods of entitlement.

Dated August 2, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge